UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| INTEGRITY BANCSHARES, INC., | ) | Case No. 08-80512 |
|    Debtor. | ) | |
| | ) | JUDGE BONAPFEL |

**FDIC'S REPLY TO TRUSTEE'S RESPONSE TO FDIC'S OBJECTION
TO, AND ALTERNATIVE REQUEST TO STAY, TRUSTEE'S
REQUESTS FOR RULE 2004 EXAMINATIONS OF SHELBY K.
GRUBBS OF MILLER & MARTIN, PLLC AND DAVID P. HOFFMAN OF
ERNST & YOUNG, LLP AND FOR PRODUCTION OF DOCUMENTS**

The Federal Deposit Insurance Corporation ("FDIC-R"), in its capacity as Receiver of Integrity Bank of Alpharetta, Georgia ("Integrity Bank" or the "Bank"), submits this reply brief to Trustee's Response to FDIC's Objection to Rule 2004 Examinations. (Doc. 37).

**I.     INTRODUCTION**

The FDIC-R does not dispute that Integrity Bancshares, Inc. (the "Debtor") is a named insured under the Bond. Nor does the FDIC-R dispute that the Debtor could theoretically present a claim under the Bond if the Debtor's own employees, acting in their capacity as the Debtor's employees, had committed dishonest or fraudulent acts which caused the Debtor a loss. However, the Trustee confuses the fact that the Debtor is one of the insureds under the Bond with the erroneous notion that the Debtor therefore has an interest in the particular Bond claim that was submitted by the Bank. The Bank's Bond claim alleges that dishonest conduct was committed by Bank employees acting in their capacity as Bank employees, and such conduct caused the Bank to sustain a loss. As a matter of law, the FDIC-R, as successor in interest to the financial institution, now

1

owns the Bank's Bond claim. *See* 12 U.S.C. § 1821(d)(2)(A)(i). All of the documents and information sought by the Trustee from the Bank's law firm (Miller & Martin) and the accounting firm hired by that law firm (Ernst & Young) relate exclusively to this Bond claim of the Bank.

The Trustee's repeated statements that he needs these materials to conduct his investigation of possible claims of the Debtor under the Bond are not true. The Trustee simply has to conduct his own investigation without the benefit of the Bank's (and now the FDIC-R's) work papers. Moreover, most of the investigative documents and other information sought by the Trustee are clearly protected from disclosure by the attorney-client privilege and/or work product doctrine because Miller & Martin was retained *by the Bank*, not by the Debtor. *See* Doc. 36-1, Exhibit A to the FDIC's Objection ("In 2007, [Miller & Martin was] engaged *by Integrity Bank* to recover losses *to the bank* covered by a financial institution fidelity bond issued by [Cincinnati] Insurance Company. [Miller & Martin] engaged Ernst & Young to assist [Miller & Martin] in representing *the bank*.")(emphasis added). The attorney-client relationship between Miller & Martin and the Bank transferred to the FDIC upon its appointment as Receiver of the Bank. 12 U.S.C. § 1821(d)(2)(A)(i). No privileged communications related to Miller & Martin's and Ernst & Young's representations of the Bank in the investigation of Bank loans is discoverable by the Trustee.

The Trustee also fails to demonstrate the good cause required to circumvent the stay of discovery entered by this Court in the related Adversary Proceedings. (AP 09-06057 and AP 09-06058, Doc. 48 at 5). By the Trustee's own admission, "there is, by necessity, overlap of the underlying facts and conduct pertaining to" the Bank's Bond

2

claim and the claims asserted in the Adversary Proceedings. (Trustee's Response at 11). The Trustee's blatant attempt at a "[f]oray into the realm of the pending adversary proceeding will violate the terms of the Court's authorization, as well as the scope of Rule 2004." *In re Matter of M4 Enterprises, Inc.*, 190 B.R. 471, 475 n. 4 (Bkrtcy. N.D. Ga. 1995).

II.   **LAW AND ARGUMENT**

A.   **The Debtor does not have an interest in the Bank's Bond claim**.

A fidelity bond is an insurance contract that contains unique language and provides, among other coverages, indemnity for losses resulting from the dishonest or fraudulent conduct of the insured's officers or other employees. Fidelity bonds are maintained by banks as a means to guard against losses resulting from fraud. *See* 12 U.S.C. § 1828(e). The particular Bond issued by Cincinnati Insurance Company ("Cincinnati") in this case is a "Depository Institutions Blanket Bond," which, by its very terms, provides indemnity for, among other matters, fraud losses related to the loan operations of the Bank. (Doc. 37, Exhibit A). As previously acknowledged by Cincinnati, it is undisputed that the Bank is deemed an "insured" for purposes of coverage of the Bank's claim under the Bond.

In order for an insured to recover under Insuring Agreement "A - Fidelity" of the Bond, the insured must prove that it suffered (1) a loss (2) resulting directly from (3) dishonest or fraudulent acts of its own Employee, acting alone or in collusion with others, (4) committed with the manifest intent to cause the insured to sustain such loss and (5) committed with the manifest intent to obtain a financial benefit for the insured's

3

Employee or for any other person or organization intended by the insured's Employee to receive such benefit. (*Id*).

The Trustee erroneously asserts that "the FDIC contends the 2004 examinations should not proceed because the Trustee lacks standing to assert <u>any</u> possible claim under the Bond." (Trustee Response at 7)(emphasis in original). The FDIC-R makes no such argument. The Debtor could theoretically present a claim under the Bond if the Debtor's own employees, acting in their capacity as the Debtor's employees, had committed dishonest or fraudulent acts which caused the Debtor a loss. That theoretical claim is separate and distinct from the Bank's Bond claim which alleges dishonest conduct that relates to Bank loans, was committed by Bank employees acting in their capacity as Bank employees, and caused the Bank to sustain a loss. This critical distinction is implicitly acknowledged by the Trustee when he admits that "certain Bond claims [may] relate solely to improper actions of an employee or officer of the Debtor, as opposed to the Bank." (*Id*.)[1]

The Trustee states that "the Bond provides coverage to **the Debtor**, the <u>sole named insured under the Bond</u>, for certain dishonest or fraudulent acts of employees and officers." (*Id*. at 2)(emphasis in original). This misleading statement does not accurately reflect the actual terms of the "Depository Institution" Bond, ignores the undisputed fact that the Bank is deemed an insured for purposes of coverage of the Bank's claim under the Bond, and fails to take into account the Bond's practical application in this situation

---

[1] The Trustee contends "that certain potential losses under the Bond may relate solely to the individual acts of the Debtor's former CEO, Steven Skow." (Trustee's Response at 7, n. 17). The Trustee fails to mention that Skow also served as the Bank's President and Chief Executive Officer. The Bank's Bond claim relates to Bank Employees' conduct that was clearly and exclusively committed in their capacities as Bank Employees involved in the lending function of the Bank.

4

where Cincinnati received a substantial pre-paid premium to provide $10 million in indemnity for losses to a shell holding company (the Debtor) *and* its wholly owned subsidiary (the Bank), a one billion dollar institution. (*Id*., Exhibit A). Obviously the Bond was procured primarily to cover the operations of the Bank, not the holding company. As fully described in the FDIC-R's Objection (Doc. 36 at 6-8), only the FDIC-R, as successor in interest to the financial institution, has standing to assert the Bank's Bond claim. *See* 12 U.S.C. § 1821(d)(2)(A)(i).

> **B.     Investigative documents and other protected information related to Miller & Martin's representation of the Bank, including Miller & Martin's engagement of Ernst & Young to assist in the investigation of the Bank's loans that are the subject of the Bank's Bond claim, are not discoverable by the Trustee.**

The Trustee states that he has stepped into the shoes of the Debtor with respect to any pre-petition privileged communications between the Debtor and the Debtor's counsel. (Trustee's Response at 8). This statement is neither disputed nor relevant to the instant analysis because Miller & Martin was retained *by the Bank*, not by the Debtor. (*See* Doc. 36-1, Exhibit A). The Trustee's contention that it "is currently unknown...who retained [Miller & Martin and Ernst & Young]" is simply wrong as a matter of fact. (Trustee's Response at 8 *compared to* Doc. 36-1, Exhibit A).[2]

---

[2] By recklessly attaching the minutes of two joint meetings of the Debtor's and the Bank's Boards of Directors, the Trustee has violated a number of provisions of federal law which preclude the disclosure of personal financial and other sensitive and confidential information. The Trustee has ostensively taken this action to support his assertion that "the board" hired Miller & Martin to investigate and "pursue one or more claims under the Bond…." (Trustee's Response at 3). However, Shelby Grubbs's March 5, 2009 letter to the Trustee makes clear that Miller & Martin was engaged *by the Bank*, not by the Debtor's Board. (Doc. 36-1, Exhibit A). This fact is self-evident since the representation involved investigating losses to the Bank caused by the alleged dishonesty of employees of the Bank relating to loans by the Bank. The fact that the Bank's Proof of Loss and Ernst & Young's investigative analysis are not part of the Debtor's records confirms that Miller & Martin was representing *the Bank*, not the holding company. (Trustee's Response at 4, n. 12). The FDIC-R does *not* waive any privilege that relates to these

Equally unavailing is the Trustee's argument that the work product doctrine is "inapplicable in this context" because "[it] does not apply to the situation in which *a client* seeks access to documents or other tangible things created or amassed by *his attorney* during the course of the representation." (Trustee's Response at 8, n. 18, *citing Spivey v. Zant*, 683 F.2d 881, 885 (5th Cir. 1982)(emphasis added)). Miller & Martin was not the Debtor's attorney with respect to Miller & Martin's investigation of the Bank loans that form the basis of the Bank's Bond claim. (Doc. 36-1, Exhibit A). This evidence also confirms that no "joint-client" relationship existed between the Bank and the Debtor with respect to Miller & Martin's investigation of Bank loans. (*Id*.) Thus, the Debtor does not hold, control or otherwise have the power to waive the Bank's (and now the FDIC-R's) privileges with respect to the Bank's investigation of its own loans. As the Trustee grudgingly admits, "[if], on the other hand, the Bank employed the firms and is the client...then...the FDIC would have the right to asset any legal privilege belonging to the Bank." (Trustee's Response at 9).[3]

---

wrongly published documents. Given the nature of the information contained in these materials, the FDIC-R has demanded by letter dated June 1, 2009 that the Trustee immediately (1) withdraw these two exhibits from the CM/ECF system, (2) demand the return to the Trustee of, or destruction of, such exhibits that the Trustee served on any third party, and (3) subject to withdrawal, should the Trustee desire to put these exhibits on the record, the Trustee obtain an Order from the Court sealing these exhibits and that the Trustee also redact from such sealed exhibits certain sensitive, confidential, protected or otherwise privileged information.

[3] The Trustee's suggestion that the FDIC-R should provide a detailed privilege log related to the substantial volume of Miller & Martin and Ernst & Young investigative materials related to the Bank's Bond claim at this time should also be rejected. (Trustee's Response at 9-10, n. 21). As stated in the FDIC-R's Objection (Doc. 36 at 10-11), undertaking that extraordinary task now, when the entire exercise will, the FDIC-R asserts, be rendered moot by the Trustee's lack of standing with respect to the Adversary Proceedings and the Bank's Bond claim, clearly does not serve the interests of efficiency.

    **C.    The Trustee has failed to demonstrate good cause required to circumvent the stay of discovery entered by this Court in the related Adversary Proceedings.**

This Court has stayed discovery in both Adversary Proceedings pending resolution of the Defendants' Motions to Withdraw the Reference. (AP 09-06057 and AP 09-06058, Doc. No. 48 at 5). Despite this stay, the Trustee seeks documents and other information from Miller & Martin and Ernst & Young that clearly relate to those Adversary Proceedings. The Trustee's First Amended Complaint for Damages in Adversary Proceeding 09-06057 alleges, in pertinent part, that the Defendants breached their fiduciary duties and committed negligent acts and omissions in their capacities as officers of the Bank with respect to the Bank's "real estate lending" relationship with borrower Guy Mitchell. (AP 09-06057, Doc. 50 at ¶¶ 28-58, 73-89). The Trustee's Rule 2004 examinations seek information related to the Bank's Bond claim which concerns former Bank officers' alleged dishonest conduct related to the same Guy Mitchell's loans. (Docs. 30 and 31 at ¶ 1).

By the Trustee's own admission, "there is, by necessity, overlap of the underlying facts and conduct pertaining to" the Bank's Bond claim and the claims asserted in the Adversary Proceedings. (Trustee's Response at 11; *see also Id*. at 3, n.10 (acknowledging an overlap of former Bank officers involved in the Adversary Proceedings and the Bank's Bond claim). Contrary to the Trustee's assertion (*Id*. at 11), the fact that the claim elements are different under the Bond and the D&O Policy (when the underlying facts are the same) has no impact on the Court's analysis of whether the Trustee's Rule 2004 examinations are proper in the present situation. Because the Trustee's Rule 2004 examinations clearly relate to, and indeed almost entirely factually overlap with, the

7

Adversary Proceedings, the "pending proceeding" rule bars the Trustee's use of Rule 2004 while the Adversary Proceedings are pending. *See In re Matter of M4 Enterprises, Inc.*, 190 B.R. at 475; *In re the Bennett Funding Group, Inc.*, 203 B.R. 24, 29 (Bkrtcy. N.D. N.Y. 1996).[4]

III. **CONCLUSION**

For the reasons set forth above and in the FDIC's Objection (Doc. 36), the FDIC-R respectfully asks this Court to vacate the May 6, 2009 Orders allowing the Trustee to conduct Rule 2004 Examinations of Shelby K. Grubbs of Miller & Martin, PLLC, and David P. Hoffman of Ernst & Young, LLP and enter an order denying those requests. In the alternative, the FDIC-R asks the Court to stay the examinations pending the resolution of motions to dismiss Adversary Proceedings 09-06057 and 09-06058. Respectfully submitted this 1st day of June, 2009.

/s/ Paul G. Durdaller
Paul Durdaller (Ga. Bar #234890)
John R. Richard (Ga. Bar #603989)
Taylor English Duma LLP
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
Phone: (770) 434-6868
Fax: (770) 434-7376
pdurdaller@taylorenglish.com
jrichard@taylorenglish.com

AND

---

[4] The older cases cited by the Trustee in his failed attempt to rebut the application of the "pending proceeding" rule in the instant litigation are readily distinguishable. *See In re Analytical Sys. Inc.*, 71 B.R. 408 (Bkrtcy. N.D. Ga. 1987)(this issue was not presented where no objection was made to the Rule 2004 examination and there was no pending adversary proceeding); *In re Table Talk, Inc.*, 51 B.R. 143 (Bkrtcy. D. Mass. 1985)(Rule 2004 examination was permitted where no pending adversary proceeding existed which involved an overlap of underlying facts and conduct); *In re Buick*, 174 B.R. 299, 305 (Bkrtcy. D. Colo. 1994)(Rule 2004 may not be used if the entities are "affected by" the pending adversary proceedings).

Kyle M. Keegan (La. Bar #19942)
Chris D. Kiesel (La. Bar #26360)
Roy, Kiesel, Keegan & DeNicola PLC
2355 Drusilla Lane
Baton Rouge, LA 70809
Phone: (225) 927-9908
Fax: (225) 926-2685
kmk@rkkdlaw.com

Counsel for the Federal Deposit Insurance Corporation, in its capacity as Receiver of Integrity Bank of Alpharetta, Georgia

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1st, 2009, I caused to be served a true and correct copy of the foregoing "FDIC'S REPLY TO TRUSTEE'S RESPONSE TO FDIC'S OBJECTION TO, AND ALTERNATIVE REQUEST TO STAY, TRUSTEE'S REQUESTS FOR RULE 2004 EXAMINATIONS OF SHELBY R. GRUBBS OF MILLER & MARTIN, PLLC AND DAVID P. HOFFMAN OF ERNST & YOUNG, LLP AND FOR PRODUCTIONOF DOCUMENTS" (i) on all Registered Users by service of a notice of electronic filing in accordance with the Electronic Case Filing Procedures; and (ii) upon each of the parties listed below via first class United States mail, postage prepaid, to ensure delivery:

| | | |
|---|---|---|
| Jay D. Brownstein<br>Brownstein Nguyen & Little LLP<br>2010 Montreal Road<br>Tucker, Georgia 30084 | Kevin Little<br>1201 Peachtree Street, NE<br>400 Colony Square,<br>Suite 200<br>Atlanta, Georgia 30361 | Jordan E. Lubin<br>8325 Dunwoody Place Building 2<br>Atlanta, Georgia 30350 |
| Dennis J. Connolly<br>John L. Latham<br>Jessica P. Corley<br>Brandon R. Williams<br>Alston & Bird, LLP<br>1201 West Peachtree Street<br>Atlanta, Georgia 30309-3424 | Anthony L. Cochran<br>J.D. Dalbey<br>CHILIVIS COCHRAN LARKINS & BEVER, LLP<br>3127 Maple Drive, N.E.<br>Atlanta, GA 30305 | Randy Edwards<br>COCHRAN & EDWARDS, LLC<br>2950 Atlanta Road SE<br>Smyrna, GA 30080 |
| Frederick R. Green<br>GOODMAN, McGUFFEY, LINDSEY & JOHNSON, LLP<br>3340 Peachtree Road, N.E.<br>Suite 2100<br>Atlanta, GA 30326 | Darius N. Kandawalla<br>Matthew J. Burkhart<br>Bailey Cavalieri LLC<br>One Columbus<br>10 West Broad Street,<br>21st Floor<br>Columbus, Ohio 43215-3422 | Aaron M. Danzig<br>Henry R. Chalmers<br>Arnall Golden GregoryLLP<br>171 17th Street, NW<br>Suite 2100<br>Atlanta, GA 30363-1031 |
| Wendy L. Hagenau<br>Robert Mercer<br>Bryan Cave LLP<br>One Atlantic Place<br>14th Floor<br>1201 W. Peachtree St, N.W.<br>Atlanta, Georgia 30309-3488 | Integrity Bancshares, Inc.<br>11138 State Bridge Road<br>Alpharetta, Georgia 30022 | U.S. Trustee<br>Office of US Trustee<br>Richard B. Russell Federal Bldg.<br>Suite 362<br>75 Spring Street, SW<br>Atlanta, Georgia 30303 |

/s/ Paul G. Durdaller
Counsel for the Federal Deposit
Insurance Corporation, in its capacity as
Receiver of Integrity Bank of
Alpharetta, Georgia

10