IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____
)
In re:                                              )
                                                        )      Chapter 7
INTEGRITY BANCSHARES, INC.,  )      Case No. 08-80512-PWB
                                                        )
                                                        )
        Debtor.                                   )
_____)
                                                        )
JORDAN E. LUBIN, CHAPTER 7  )
TRUSTEE,                                      )
                                                        )      Adversary Proceeding No.
        Plaintiff,                               )
                                                        )      _____
        v.                                          )
                                                        )
FEDERAL DEPOSIT INSURANCE )
CORPORATION, AS RECEIVER    )
FOR INTEGRITY BANK,              )
                                                        )
        Defendant.                             )
_____)

## COMPLAINT FOR DECLARATORY JUDGMENT, ACCOUNTING, AND TURNOVER OF PROPERTY OF THE BANKRUPTCY ESTATE

Plaintiff Jordan E. Lubin, the Chapter 7 Trustee ("Trustee") for Integrity

Bancshares, Inc., the debtor in the above-referenced Chapter 7 bankruptcy case

("Debtor"), through undersigned counsel, alleges as follows for his Complaint for

Declaratory Judgment, Accounting and Turnover of Property of the Bankruptcy

Estate ("Complaint") against the Federal Deposit Insurance Corporation, as

Receiver for Integrity Bank ("FDIC" or "Defendant"):

## **BANKRUPTCY CASE BACKGROUND; PARTIES**

1.

Plaintiff was initially appointed interim Chapter 7 Trustee for the Debtor,

and became the permanent Trustee on November 18, 2008 at the meeting of

creditors conducted pursuant to 11 U.S.C. §341(a).

2.

The Debtor is a Georgia bank holding company and parent of Integrity Bank

(the "Bank"), formerly a full-service community bank located in Atlanta.

3.

On August 29, 2008, the Bank was closed by the Georgia Department of

Banking and Finance and the FDIC was appointed receiver for the Bank.

4.

On October 13, 2008 (the "Petition Date"), the Debtor filed its voluntary

Chapter 7 petition.  The Chapter 7 case is open and subject to administration by the

Chapter 7 Trustee.

5.

The FDIC may be served with process in this adversary proceeding as

provided in Federal Rule of Bankruptcy Procedure 7004(b).

## JURISDICTION AND VENUE

6.

The court has jurisdiction over this adversary proceeding and the parties

pursuant to 28 U.S.C. §§ 157 and 1334.

7.

This adversary proceeding is a core proceeding pursuant to 28 U.S. C. §

157(b).  If for any reason the Court determines that all or any portion of this

adversary proceeding is non-core, the Trustee consents to the jurisdiction of this

Court.

8.

This adversary proceeding arises in Chapter 7 case number 08-80512-PWB,

pending in the United States Bankruptcy Court for the Northern District of

Georgia, Atlanta Division.  Accordingly, venue of this adversary proceeding is

proper in this Court pursuant to 28 U.S.C. § 1409(a).

9.

This adversary proceeding concerns an actual and justiciable controversy

that is within the jurisdiction of this Court under the Declaratory Judgment Act, 28

U.S.C. § 2201 (the "Declaratory Judgment Act").

10.

This adversary proceeding concerns the rights and obligations of the parties

respecting property in which the Debtor's bankruptcy estate has an interest, and is

thus a civil proceeding arising under the Bankruptcy Code, or arising in or related

to a case under the Bankruptcy Code, within the meaning of 28 U.S.C. § 1334(b).

## **SUMMARY OF CLAIMS**

11.

Pursuant to the Declaratory Judgment Act the Plaintiff seeks declaratory

relief concerning the rights of the Debtor's estate with respect to tax refunds issued

to the Debtor by state and federal taxing authorities prior to the filing of the

Debtor's Chapter 7 case, and tax refunds either applied for or to be applied for and

not yet paid by such taxing authorities.

12.

The Debtor's rights with respect to the subject tax refunds generally arise

under a Tax Allocation Agreement entered into by the Debtor and the Bank (the

"Tax Agreement"), a true and correct copy of which is attached as Exhibit 1 to this

Complaint.  As required under the Tax Agreement, the Debtor paid taxes as to

which refunds have been issued by taxing authorities, or as to which refunds may

be issued in the future.

13.

The Trustee seeks a full and complete accounting that would allow him to determine what funds the Debtor's estate is entitled to by virtue of the Tax Agreement, including an accounting of all tax payments made by the Bank to the Debtor which the Bank was liable to pay under the Tax Agreement, as well as all tax refunds received by, in the possession or control of, or applied for by, the FDIC on account of taxes paid by the Debtor.

14.

The Trustee further seeks an order requiring the FDIC to turnover to the Debtor's estate all tax refunds obtained by the FDIC, as well as any refunds applied for but not yet received, that the Court determines constitute property of the Debtor's estate, or alternatively an order requiring the FDIC to turnover such amounts of the subject refunds representing the total amount of tax payments owed but not paid by the Bank to the Debtor under the Tax Agreement.

## FACTUAL BACKGROUND

15.

The Tax Agreement provides the methods by which tax liabilities and credits are allocated between and paid by the Debtor and Bank.

16.

The Tax Agreement was made, entered into and intended to be performed in the State of Georgia, and therefore is governed by Georgia law.

17.

Under the Tax Agreement, the Debtor and Bank agreed that they would file returns and pay taxes as a "consolidated group" (the "Group") within the meaning of section 1504(a) of the Internal Revenue Code.  Tax Agreement, §§1-6.

18.

For example, the Debtor and Bank agreed that they "shall file a consolidated income tax return" and that "[a]ll payments of tax to the Internal Revenue Service shall be made by the [Debtor] at the time such payments are due." Id., §§2-3.

19.

With regard to the payment of taxes owed by the Bank, the parties agreed that "[t]he Bank shall pay all estimated income tax payments and final income tax payments to the [Debtor] who in turn will remit these payments to the Internal Revenue Service on behalf of the consolidated group."  Id., §3.

20.

Under the Tax Agreement, the Debtor is obligated (among other things) "to pay the Internal Revenue Service any tax that must be paid on behalf of the

consolidated group as a result of income of the [Debtor] over and above the Bank's

income." Id., §6.

21.

With regard to taxable losses and corresponding benefits, the Tax

Agreement provides as follows:  "If a result of filing a consolidated return, a tax

benefit arises from a taxable loss incurred by the Bank, then *the [Debtor] agrees to

pay in cash to the Bank* the amount of such benefit."  Id., §7 (emphasis added.)

22.

The Tax Agreement provides as follows with regard to tax refunds:

> If the Bank incurs a loss for tax purposes it should record a current
> income tax benefit and *receive a refund from the [Debtor]* in an
> amount no less than the amount the Bank would have been entitled to
> receive as a separate entity.  *The refund should be made to the Bank
> within a reasonable period following the date the Bank would have
> filed its own return, regardless of whether the [Debtor] is receiving a
> refund*.  Tax Agreement, §7 (emphasis added.)

23.

With regard to the timing of tax payments generally between the Debtor and

Bank, the parties agreed as follows:

> Payment of tax benefits from the Bank to the [Debtor] or from the
> [Debtor] to the Bank *shall be paid* at such time as the estimates for
> such tax would have been due and the time income tax returns are
> due.  Tax Agreement, §8 (emphasis added.)

24.

The Debtor filed a consolidated federal income tax return on behalf of the

Group for the tax year ending December 31, 2005 (the "2005 Federal Tax

Return.")  As shown on the 2005 Federal Tax Return, for tax year 2005 the Group

had taxable income of $12,294,354 and federal income tax liability of $4,203,024.

25.

The Debtor filed a consolidated state income tax return for the Group for the

tax year ending December 31, 2005 (the "2005 Georgia Tax Return.")  As shown

on the 2005 Georgia Tax Return, for tax year 2005 the Group had state income tax

liability of $728,803 and Georgia BEST tax credits of $245,228, leaving a net

income tax liability of $483,575.

26.

The Debtor filed a consolidated federal income tax return for the Group for

the tax year ending December 31, 2006 (the "2006 Tax Federal Return.")  As

shown on the 2006 Federal Tax Return, for tax year 2006 the Group had taxable

income of $17,946,214 and federal income tax liability of $6,269,561.

27.

The Debtor filed a consolidated state tax return for the Group for the tax

year ending December 31, 2006 (the "2006 Georgia Tax Return.")  As shown on

the 2006 Georgia Tax Return, for tax year 2006 the Group had state income tax

liability of $1,068,148 and Georgia BEST tax credits of $120,028, leaving a net income tax liability of $948,120.

28.

Upon information and belief, the Debtor paid all federal and state income taxes due from the Group for tax years 2005 and 2006.

29.

The Debtor filed a consolidated federal income tax return for the Group for the tax year ending December 31, 2007 (the "2007 Federal Tax Return.")  As shown on the 2007 Federal Tax Return, for tax year 2007 the Group had a net operating loss of $40,680,457.  Therefore, the Group had zero tax liability for tax year 2007.  The 2007 Federal Tax Return also showed that the Group paid $725,000 in estimated 2007 federal income taxes, which the Group requested to be refunded.

30.

The Debtor filed a consolidated state tax return for the Group for the tax year ending December 31, 2007 (the "2007 Georgia Tax Return.")  As shown on the 2007 Georgia Tax Return, for tax year 2007 the Group had a Georgia net operating loss of $40,828,882 and thus a state income tax liability of zero.  The 2007 Georgia Tax Return also showed that the Group paid $263,000 in estimated 2007 state income taxes, which the Group requested to be refunded.

9

31.

In accordance with the Tax Agreement, on or about September 15, 2008, the

Debtor filed a federal Form 1139 for the tax year ending December 31, 2007 (the

"Amended 2007 Federal Return") seeking refunds of $3,956,947 and $5,909,199

attributable, respectively, to the carryback of the Group's net operating loss

incurred in 2007 to tax years 2005 and 2006 (the "2007 Federal Tax Refunds.")

32.

In accordance with the Tax Agreement, the Debtor also filed a state Form

IT 552 for the tax year ending December 31, 2007 (the "Amended 2007 Georgia

Return") seeking refunds of $483,575 and $948,120 attributable, respectively, to

the carryback of the Group's net operating loss incurred in 2007 to tax years 2005

and 2006 (the "2007 Georgia Tax Refunds," and together with the 2007 Federal

Tax Refunds, the "2007 Tax Refunds.")

33.

The majority of the losses reflected on the Amended 2007 Federal Return

and Amended 2007 Georgia Return are attributable to Bank losses incurred or

booked by the Bank in tax year 2007.  Under the Tax Agreement, the Debtor was

obligated to refund to the Bank that portion of the 2007 Tax Refunds attributable to

the Bank's losses "within a reasonable period following the date the Bank would

have filed its own return, regardless of whether the [Debtor] is receiving a refund."

Tax Agreement, § 7.

34.

On or about September 8, 2008, the United States Treasury issued to the

Debtor payments of $3,956,947 and $5,909,199 for the 2007 Federal Tax Refunds.

The payments, true copies of which are attached as <u>Exhibit 2</u> hereto, were

addressed and mailed to the Debtor at its office located at 11140 State Bridge

Road, Alpharetta, Georgia.  Upon information and belief, the FDIC, on behalf of

the Bank, received and took possession of the 2007 Federal Tax Refund payments.

35.

On or about September 15, 2008, the Georgia Department of Revenue issued

to the Debtor and Bank a payment of $263,000 for tax year 2007 representing a

refund of estimated tax payments made by the Group that year (the "2007 Georgia

Estimated Tax Refund").  Upon information and belief, said payment, a true copy

of which is attached as <u>Exhibit 3</u> hereto, was addressed and mailed to the Debtor at

its office located at 11140 State Bridge Road, Alpharetta, Georgia.  Upon

information and belief, the FDIC, on behalf of the Bank, received and took

possession of the 2007 Georgia Estimated Tax Refund.

36.

To date, Georgia has not issued payment to the Debtor or any other entity on

respecting the 2007 Georgia Tax Refunds.  However, the Trustee anticipates that

such payment will be made in the near future.

37.

The Trustee further anticipates that the Debtor may seek additional federal

and state income tax refunds for the Group based upon an allowed carryback of

unused 2007 and 2008 net operating losses to offset tax liabilities paid by the

Group for tax years prior to 2005 ("Additional Carryback Refunds.")

## **COUNT I**

## **DECLARATORY JUDGMENT**

38.

All of the above paragraphs are restated as if fully stated herein.

39.

There is an actual and justiciable controversy between the parties as to their

respective rights and obligations under the Tax Agreement and applicable law with

respect to tax refunds, which controversy requires resolution by this Court.

40.

Under the Declaratory Judgment Act, the Court may declare the rights,

obligations and relations of interested parties concerning the subject matter of the

Complaint, including the interests of the Trustee, on behalf of the Debtor's estate, and the FDIC as receiver for the Bank.

41.

The filing of the Debtor's Chapter 7 bankruptcy petition commenced the underlying bankruptcy case and created the Debtor's bankruptcy estate.

42.

Pursuant to Section 541 of the Bankruptcy Code, the Debtor's bankruptcy estate is comprised of all legal and equitable interests of the Debtor in property, including contractual rights, existing as of the Petition Date.

43.

The payments of the 2007 Federal Tax Refunds and the 2007 Georgia Estimated Tax Refund by the United States Treasury and Georgia Department of Revenue were made and issued to the Debtor.

44.

Under the Tax Agreement, Section 541 of the Bankruptcy Code and other applicable law, as of the Petition Date the Debtor had, and continues to have, a legal and contractual right to receive the 2007 Tax Refunds, 2007 Georgia Estimated Tax Refund, and any Additional Carryback Refunds applied for and issued in the future (collectively, the "Refunds.")

45.

Under the Tax Agreement, the Bank has a contractual right to receive

payment by the Debtor of any portion of a tax refund of the Group attributable to a

taxable net loss of the Bank.  Tax Agreement, §7.  Thus, the relationship between

the Debtor and Bank with respect to tax refunds applied for by the Debtor on

behalf of the Group under the Tax Agreement, including the Refunds, is that of

debtor-creditor.

46.

Under the Tax Agreement, Section 541 of the Bankruptcy Code and other

applicable law, the Refunds constitute property of the Debtor's bankruptcy estate

and the FDIC, as successor to the Bank, is a general unsecured creditor with

respect to its claim to the Refunds.

WHEREFORE, the Trustee respectfully requests that (1) judgment be

entered in favor of the Trustee under Count I of this Complaint and the Court

declare that the Tax Refunds are property of the Debtor's bankruptcy estate, and

(2) the Court grant the Trustee such other and further relief as is just and proper

under the circumstances.

## COUNT II

## ACCOUNTING

47.

All of the above paragraphs are restated as if fully stated herein.

48.

Under the Tax Agreement, the Bank was obligated to timely pay to the Debtor its share of tax liabilities attributable to taxable income and expenses of the Bank, as though the Bank were a separate tax filing entity.  See Tax Agreement, §§ 1-3.

49.

Upon information and belief, while the Bank made various tax payments to the Debtor for tax years 2005 and 2006 and prior years, the Bank failed to pay its full share of taxes owed by and paid on behalf of the Group in accordance with the Tax Agreement.

50.

Without prejudice, and as an alternative to, the Trustee's claims in Count I herein that the Tax Refunds constitute property of the Debtor's bankruptcy estate, due to the Bank's failure to pay all taxes due for tax years 2005 and 2006, and possibly other tax years, some portion of the Tax Refunds constitute property of the Debtor's bankruptcy estate.

51.

The parties' rights and obligations concerning the Tax Refunds relate to complex and involved tax accounting between the Debtor and the Bank.

52.

The parties' rights and obligations concerning the Tax Refunds are governed by the Tax Agreement, and thus constitute or relate to a mutual account arising out of contractual privity between the Debtor and the Bank.

53.

The Debtor and the Bank are tenants in common with respect to all or some portion of the Tax Refunds, and the Trustee is entitled to receive the Debtor's share of said property.

54.

The FDIC, as receiver for the Bank, is in possession of all, or a significant portion of, the records relating to the Bank's payment of taxes to the Debtor under the Tax Agreement.

55.

Pursuant to O.C.G.A. § 23-2-70 and other applicable law, the Trustee is entitled to an accounting of (a) all tax payments and accounting between the Debtor and Bank for tax years 2000 through 2008, (b) all refunds or other payments received by the Bank or FDIC on behalf of the Bank, whether pursuant

to the Tax Agreement or otherwise, relating to tax liabilities of the Group, and (c) the use, allocation and/or disposition of such funds by the Bank or FDIC. Such accounting is necessary and required to determine what portion of the Tax Refunds constitutes property of the Debtor's bankruptcy estate that the Trustee is entitled to recover in this proceeding.

WHEREFORE, the Trustee respectfully requests that (1) judgment be entered in favor of the Trustee under Count II of this Complaint and the Court order an accounting of (a) all tax payments and accounting between the Debtor and Bank for tax years 2000 through 2008, (b) all refunds or other payments received by the Bank or FDIC on behalf of the Bank, whether pursuant to the Tax Agreement or otherwise, relating to tax liabilities of the Group, and (c) the use, allocation and/or disposition of such funds by the Bank or FDIC, to determine what portion of the Tax Refunds constitutes property of the Debtor's bankruptcy estate that the Trustee is entitled to recover in this proceeding, and (2) the Court grant the Trustee such other and further relief as is just and proper under the circumstances.

## COUNT III

## TURNOVER OF PROPERTY OF THE BANKRUPTCY ESTATE

56.

All of the above paragraphs are restated as if fully stated herein.

17

57.

As alleged above, the FDIC is in possession, custody or control of the 2007

Federal Tax Refunds and 2007 Georgia Estimated Tax Refund.

58.

As shown herein, said refunds, as well as any other Tax Refunds, are

property of the Debtor's bankruptcy estate.

59.

The Trustee is entitled under 11 U.S.C. § 542(a) to turnover of all property

of the Debtor's bankruptcy estate, including the 2007 Federal Tax Refunds, 2007

Georgia Estimated Tax Refund, and any other Tax Refunds possessed or received

by the FDIC, for the benefit of the Debtor's bankruptcy estate.

60.

Alternatively, should the Court deny the declaratory relief sought by the

Trustee in Count I of this Complaint, the Debtor is entitled under 11 U.S.C. §

541(a) to turnover by the FDIC of all amounts owed to the Debtor under the Tax

Agreement, as determined by the accounting sought in Count II of the Complaint.

WHEREFORE, the Plaintiff respectfully requests that (1) judgment be

entered in favor of the Plaintiff under Count III of this Complaint and the Court

order the FDIC to turnover all property of the Debtor's bankruptcy estate to the

Trustee, and (2) the Court grant the Trustee such other and further relief as is just

and proper under the circumstances.

## COUNT IV

## TURNOVER OF PROPERTY OF THE BANKRUPTCY ESTATE

### (Avoidable Preference)

61.

All of the above paragraphs are restated as if fully stated herein.

62.

The Bank and FDIC, on behalf of the Bank, are creditors of the Debtor's

estate.

63.

Upon information and belief, the FDIC received, took possession of, and

converted to its use the 2007 Tax Refunds and 2007 Georgia Estimated Tax

Refund shortly after said refunds were issued by the United States Treasury and the

Georgia Department of Revenue, respectively.

64.

The transfer, receipt, possession and/or use by the FDIC of the 2007 Tax

Refunds and 2007 Georgia Estimated Tax Refund constitute transfers of an interest

of the Debtor in property that occurred within one (1) year prior to the filing of

Debtor's bankruptcy petition.

65.

The transfer, receipt, possession and/or use by the FDIC of the 2007 Tax Refunds and 2007 Georgia Estimated Tax Refund was for or on account of antecedent debts owed by the Debtor to the Bank before, and as of the time, the FDIC obtained said refunds.

66.

The Debtor was insolvent at the time the FDIC obtained the 2007 Tax Refunds and 2007 Georgia Estimated Tax Refund.

67.

The FDIC's receipt of the 2007 Tax Refunds and 2007 Georgia Estimated Tax Refund caused the FDIC, on behalf of the Bank, to receive more in the Chapter 7 case than it would have received had it not obtained said refunds, and more than it would have received as a creditor of Debtor's estate under applicable provisions of the Bankruptcy Code.

68.

The Trustee is entitled under 11 U.S.C. § 547(b) to turnover by the FDIC of all property of the Debtor's bankruptcy estate, including the 2007 Federal Tax Refunds and 2007 Georgia Estimated Tax Refund, and any other such funds or property of the Debtor possessed, received or obtained by the FDIC within one (1)

year prior to the filing of the Debtor's bankruptcy petition, for the benefit of the

Debtor's bankruptcy estate.

WHEREFORE, the Trustee respectfully requests that (1) judgment be

entered in favor of the Trustee under Count IV of this Complaint and the Court

order the FDIC to turnover to the Trustee all property of the Debtor's bankruptcy

estate that is the subject of an avoidable preference under 11 U.S.C. §547(b),

including the 2007 Federal Tax Refunds and 2007 Georgia Estimated Tax Refund,

and (2) the Court grant the Trustee such other and further relief as is just and

proper under the circumstances.

Submitted this 17th day of February, 2010.

BROWNSTEIN NGUYEN & LITTLE LLP


By:  /s/ Jay D. Brownstein
Jay D. Brownstein
Georgia Bar No. 002590
2010 Montreal Road
Tucker, Georgia 30084
(678) 921-013
jdb@bnllawfirm.com

Kevin Little
Georgia Bar No. 454225
1201 Peachtree Street, NE
400 Colony Square, Suite 200
Atlanta, Georgia 30361
(404) 921-4040
ksl@bnllawfirm.com

*Special Counsel for the Chapter 7 Trustee*